UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| WALTER SNOVELLE,<br><br>        Plaintiff,<br><br>  v.<br><br>JO ANNE B. BARNHART, Commissioner of Social Security,<br><br>        Defendant. | CASE NO.   C05-5460KLS<br><br>ORDER REVERSING THE COMMISSIONER'S DECISION AND GRANTING BENEFITS |

Plaintiff, Walter Snovelle, has brought this matter for judicial review of the denial of his applications for disability insurance and supplemental security income ("SSI") benefits. The parties have consented to have this matter be heard by the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(c), Federal Rule of Civil Procedure 73 and Local Magistrates Rule 13. After reviewing the parties' briefs and the remaining record, the undersigned hereby finds and ORDERS as follows:

FACTUAL AND PROCEDURAL HISTORY

Plaintiff currently is sixty years old.[1] Tr. 59. He has completed high school education and one year

---

[1] Plaintiff's date of birth has been redacted in accordance with the General Order of the Court regarding Public Access to Electronic Case Files, pursuant to the official policy on privacy adopted by the Judicial Conference of the United States.

ORDER
Page - 1

of college course work, and has past work experience as a ship engineer, band saw operator, refrigeration mechanic, building maintenance engineer, welder, pipefitter, and metal fabricator. Tr. 22, 114, 127.

On July 15, 1999, plaintiff filed applications for disability insurance and SSI benefits, alleging disability as of May 13, 1997, due to major depression, insomnia and anxiety. Tr. 96-98, 108, 389-92. His applications were denied initially and on reconsideration. Tr. 59-61, 67, 393-94, 398-99. A hearing was held before an administrative law judge ("ALJ") on May 8, 2001, at which plaintiff, represented by counsel, appeared and testified, as did a vocational expert. Tr. 404-449.

On June 6, 2001, the ALJ issued a decision, finding plaintiff to be capable of returning to his past relevant work, and therefore not disabled. Tr. 38-44. On January 10, 2003, plaintiff's request for review was granted by the Appeals Council, which vacated the ALJ's decision and remanded the matter for further administrative proceedings. Tr. 2, 50-53. A new hearing was held on August 12, 2003, before the same ALJ, at which plaintiff, represented by counsel, again appeared and testified, as did a different vocational expert. Tr. 450-97.

On December 23, 2003, the ALJ issued a second decision, once more determining plaintiff to be not disabled, finding specifically in relevant part:

(1) at step one of the disability evaluation process, plaintiff had not engaged in substantial gainful activity since May 13, 1997;

(2) at step two, plaintiff had a "severe" impairment consisting of a narcissistic personality disorder;

(3) at step three, none of plaintiff's impairments met or equaled the criteria of any of those listed in 20 C.F.R. Part 404, Subpart P, Appendix 1; and

(4) at step four, plaintiff had the residual functional capacity to perform medium work with the additional limitation of being unable "to work with others except occasionally," which did not preclude him from performing his past relevant work as a band saw operator or marine engineer.

Tr. 33-34. Plaintiff's request for review was denied by the Appeals Council on May 27, 2005, making the ALJ's decision the Commissioner's final decision. Tr. 1, 9; 20 C.F.R. §404.981, § 416.1481.

On July 11, 2005, plaintiff filed a complaint in this Court seeking review of the ALJ's decision. (Dkt. #1-#3). Specifically, plaintiff argues that decision should be reversed and remanded for an award of benefits for the following reasons:

(a) the ALJ erred in rejecting the opinions of plaintiff's treating and examining physicians and other medical sources in the record;

(b) the ALJ erred in not finding plaintiff's depression to be severe;

(c) the ALJ erred in finding that plaintiff's narcissistic personality disorder did not meet or equal the criteria of 20 C.F.R. Part 404, Subpart P, Appendix 1, § 12.08;

(d) the ALJ erred in rejecting plaintiff's testimony;

(e) the ALJ erred in assessing plaintiff's residual functional capacity; and

(f) the ALJ erred in finding plaintiff capable of returning to his past relevant work.

In response, defendant agrees the ALJ erred in evaluating the medical evidence in the record, in assessing plaintiff's residual functional capacity and in finding him capable of returning to his past relevant work, but argues this matter should be remanded for further administrative proceedings, because issues remain to be resolved concerning plaintiff's alleged disability. While the Court too finds the ALJ erred in determining plaintiff to be not disabled, and thus finds the ALJ's decision should be reversed, for the reasons set forth below, this matter hereby is remanded to the Commissioner for an award of benefits.

## DISCUSSION

This court must uphold the Commissioner's determination that plaintiff is not disabled if the Commissioner applied the proper legal standard and there is substantial evidence in the record as a whole to support the decision. Hoffman v. Heckler, 785 F.2d 1423, 1425 (9th Cir. 1986). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Richardson v. Perales, 402 U.S. 389, 401 (1971); Fife v. Heckler, 767 F.2d 1427, 1429 (9th Cir. 1985). It is more than a scintilla but less than a preponderance. Sorenson v. Weinberger, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975); Carr v. Sullivan, 772 F. Supp. 522, 524-25 (E.D. Wash. 1991). If the evidence admits of more than one rational interpretation, the court must uphold the Commissioner's decision. Allen v. Heckler, 749 F.2d 577, 579 (9th Cir. 1984).

I. The ALJ Erred in Evaluating the Medical Evidence in the Record

The ALJ is responsible for determining credibility and resolving ambiguities and conflicts in the medical evidence. Reddick v. Chater, 157 F.3d 715, 722 (9th Cir. 1998). Where the medical evidence in the record is not conclusive, "questions of credibility and resolution of conflicts" are solely the functions of the ALJ. Sample v. Schweiker, 694 F.2d 639, 642 (9th Cir. 1982). In such cases, "the ALJ's conclusion must be upheld." Morgan v. Commissioner of the Social Security Administration, 169 F.3d 595, 601 (9th Cir.

ORDER
Page - 3

1 1999).  Determining whether inconsistencies in the medical evidence "are material (or are in fact
2 inconsistencies at all) and whether certain factors are relevant to discount" the opinions of medical experts
3 "falls within this responsibility." Id. at 603.

4      In resolving questions of credibility and conflicts in the evidence, an ALJ's findings "must be
5 supported by specific, cogent reasons." Reddick, 157 F.3d at 725.  The ALJ can do this "by setting out a
6 detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation
7 thereof, and making findings." Id.  The ALJ also may draw inferences "logically flowing from the evidence."
8 Sample, 694 F.2d at 642.  Further, the court itself may draw "specific and legitimate inferences from the
9 ALJ's opinion." Magallanes v. Bowen, 881 F.2d 747, 755, (9th Cir. 1989).

10      The ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of
11 either a treating or examining physician. Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1996).  Even when a
12 treating or examining physician's opinion is contradicted, that opinion "can only be rejected for specific and
13 legitimate reasons that are supported by substantial evidence in the record." Id. at 830-31.  However, the
14 ALJ "need not discuss *all* evidence presented" to him or her. Vincent on Behalf of Vincent v. Heckler, 739
15 F.3d 1393, 1394-95 (9th Cir. 1984) (citation omitted) (emphasis in the original).  The ALJ must only explain
16 why "significant probative evidence has been rejected." Id.; see also Cotter v. Harris, 642 F.2d 700, 706-07
17 (3d Cir. 1981); Garfield v. Schweiker, 732 F.2d 605, 610 (7th Cir. 1984).

18      In general, more weight is given to a treating physician's opinion than to the opinions of those who
19 do not treat the claimant. Lester, 81 F.3d at 830.  On the other hand, an ALJ need not accept the opinion of
20 a treating physician, "if that opinion is brief, conclusory, and inadequately supported by clinical findings" or
21 "by the record as a whole." Batson v. Commissioner of Social Security Administration, 359 F.3d 1190,
22 1195 (9th Cir.,2004); Thomas v. Barnhart, 278 F.3d 947, 957 (9th Cir. 2002); Tonapetyan v. Halter, 242
23 F.3d 1144, 1149 (9th Cir. 2001).  An examining physician's opinion is "entitled to greater weight than the
24 opinion of a nonexamining physician." Lester, 81 F.3d at 830-31.  A nonexamining physician's opinion may
25 constitute substantial evidence if "it is consistent with other independent evidence in the record." Id. at 830-
26 31; Tonapetyan, 242 F.3d at 1149.

27      Plaintiff argues in his opening brief that the ALJ erred in rejecting the opinions of his treating and
28 examining physicians and other medical sources in the record.  Defendant points out in her response brief

ORDER
Page - 4

that plaintiff summarily states, without any specific reference to the record, that the ALJ's evaluation of those opinions was not sufficient. Nevertheless, defendant agrees that the ALJ did not adequately address the evidence in the record from Bruce A. McCollum, Psy.D., Robert E. Schneider, Ph.D., and plaintiff's mental health therapists.

In his reply brief, plaintiff again addresses only those specific medical source opinions discussed by defendant in her response brief. Accordingly, because the parties are in agreement that the ALJ erred in evaluating the opinions of Dr. McCollum, Dr. Schneider and plaintiff's mental health therapists, the Court so finds as well. Because plaintiff has not alleged the ALJ erred in evaluating the opinion of any other specific medical source in the record, however, the Court's findings here are limited solely to the opinions discussed by defendant and plaintiff in their response and reply briefs respectively.

II.    The ALJ Properly Did Not Find Plaintiff's Depression to Be Severe

To determine whether a claimant is entitled to disability benefits, the ALJ engages in a five-step sequential evaluation process. 20 C.F.R. § 404.1520, § 416.920. At step two of that process, the ALJ must determine if an impairment is "severe." Id. An impairment is "not severe" if it does not "significantly limit" a claimant's mental or physical abilities to do basic work activities. 20 C.F.R. § 404.1520(a)(4)(iii), (c), § 416.920(a)(4)(iii), ( c); Social Security Ruling ("SSR") 96-3p, 1996 WL 374181 *1. Basic work activities are those "abilities and aptitudes necessary to do most jobs." 20 C.F.R. § 404.1521(b), § 416.921(b); SSR 85- 28, 1985 WL 56856 *3.

An impairment is not severe only if the evidence establishes a slight abnormality that has "no more than a minimal effect on an individual[']s ability to work." See SSR 85-28, 1985 WL 56856 *3; Smolen v. Chater, 80 F.3d 1273, 1290 (9th Cir. 1996); Yuckert v. Bowen, 841 F.2d 303, 306 (9th Cir.1988). Plaintiff has the burden of proving that her "impairments or their symptoms affect her ability to perform basic work activities." Edlund v. Massanari, 253 F.3d 1152, 1159-60 (9th Cir. 2001); Tidwell v. Apfel, 161 F.3d 599, 601 (9th Cir. 1998). The step two inquiry described above, however, is a *de minimis* screening device used to dispose of groundless claims. Smolen, 80 F.3d at 1290.

In his opening brief, plaintiff states the ALJ "improperly dismissed" his depression "as insignificant at step two simply because it was recurrent in nature and, therefore, was less severe at certain times." Plaintiff's Opening Brief, p. 33. Plaintiff, however, has pointed to no specific evidence in the record to

show his depression in fact was severe, even though he has the burden of proof at this step of the disability evaluation process. See Edlund, 253 F.3d at 1159-60; Tidwell, 161 F.3d at 601.  This is hardly sufficient to challenge the ALJ's detailed discussion of the medical evidence in the record concerning that impairment.  Tr. 23-26.  As such, the Court does not find any error on the part of the ALJ here.

III.  The ALJ's Step Three Analysis Was Proper

At step three of the disability evaluation process, the ALJ must evaluate the claimant's impairments to see if they meet or equal any of the impairments listed in 20 C.F. R. Part 404, Subpart P, Appendix 1 (the "Listings"). 20 C.F.R § 404.1520(d), § 416.920(d); Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999).  If any of the claimant's impairments meet or equal a listed impairment, he or she is deemed disabled. Id.  The burden of proof is on the claimant to establish he or she meets or equals any of the impairments in the Listings. Tacket, 180 F.3d at 1098.

A mental or physical impairment "must result from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques." 20 C.F.R. § 404.1508, § 416.908.  It must be established by medical evidence "consisting of signs, symptoms, and laboratory findings." Id.  An impairment meets a listed impairment "only when it manifests the specific findings described in the set of medical criteria for that listed impairment." SSR 83-19, 1983 WL 31248 *2.  It equals a listed impairment "only if the medical findings (defined as a set of symptoms, signs, and laboratory findings) are at least equivalent in severity to the set of medical findings for the listed impairment." Id. at *2.  However, "symptoms alone" will not justify a finding of equivalence. Id.

Plaintiff argues the ALJ erred in finding his narcissistic personality disorder did not meet or equal Listing 12.08.  Listing 12.08 reads as follows:

> 12.08 Personality Disorders: A personality disorder exists when personality traits are inflexible and maladaptive and cause either significant impairment in social or occupational functioning or subjective distress.  Characteristic features are typical of the individual's long-term functioning and are not limited to discrete episodes of illness.
>
> The required level of severity for these disorders is met when the requirements in both A and B are satisfied.
>
> A. Deeply ingrained, maladaptive patterns of behavior associated with one of the following:
>
> 1. Seclusiveness or autistic thinking; or
>
> 2. Pathologically inappropriate suspiciousness or hostility; or

3. Oddities of thought, perception, speech and behavior; or

4. Persistent disturbances of mood or affect; or

5. Pathological dependence, passivity, or aggressivity; or

6. Intense and unstable interpersonal relationships and impulsive and damaging behavior;

And

B. Resulting in at least two of the following:

1. Marked restriction of activities of daily living; or

2. Marked difficulties in maintaining social functioning; or

3. Marked difficulties in maintaining concentration, persistence, or pace; or

4. Repeated episodes of decompensation, each of extended duration.

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.08.

The ALJ provided the following reasons why plaintiff did not meet or equal this Listing:

> Mr. Snovelle's narcissistic personality disorder is considered under section 12.08 of the Listing of Impairments at Appendix 1. The level of severity of this disorder is met when both the "A" and "B" criteria are satisfied. Under the "A" criteria, the claimant demonstrates inflexible and maladaptive personality traits which causes subjective distress as evidenced by his narcissistic personality disorder. Otherwise, he does not satisfy the criteria under this section. Under the "B" criteria, claimant has demonstrated only slight limitations in restriction of activities of daily living. However, he does have marked limitation in maintaining social functioning, as evidenced throughout the record. He only has deficiencies of concentration, persistence and pace seldomly [sic], and has had no episodes of decompensation. As a claimant must have at least two areas of the "B" criteria which are found to be marked, Mr. Snovelle does not satisfy the requirements in this area either.

Tr. 27.

Plaintiff argues the above step three analysis is flawed, because the ALJ failed to acknowledge that in addition to being markedly limited in the area of maintaining social functioning, he also "decompensates dramatically." Plaintiff's Opening Brief, p. 33 (citing Tr. 364). Plaintiff's argument, however, ignores the fact that to meet Listing 12.08, his impairment must meet the "A" criteria of that Listing as well. Thus, while, as noted above, ALJ found plaintiff's narcissistic personality disorder did not satisfy this criteria, plaintiff has not challenged that finding.

To support his assertion that his narcissistic personality disorder meets or equals the criteria of Listing 12.08B.4 ("[r]epeated episodes of decompensation, each of extended duration"), plaintiff cites to one mental health therapist progress note, dated January 14, 2003, in which it is stated that "[b]y history,

this client needs medication and ongoing support <u>or</u> he decompensates dramatically." Tr. 364 (emphasis added). First, it is clear from this note that as long as plaintiff receives medication and ongoing support, he will not "decompensate dramatically." Further, in light of the medical evidence in the record as a whole, that one note hardly demonstrates that plaintiff experiences "[r]epeated episodes of decompensation, each of extended duration." 20 C.F.R., Pt. 404, Subpt. P. App. 1, § 12.08B.4.

Lastly, plaintiff argues the ALJ failed to "explain adequately his evaluation of alternative tests and the combined effects of the impairments." Plaintiff's Opening Brief, p. 33 (citing <u>Marcia v. Sullivan</u>, 900 F.2d 172, 176 (9th Cir. 1990)). Plaintiff, however, does not state what "alternative tests" the ALJ should have evaluated. It is true the ALJ "must evaluate the relevant evidence before concluding that a claimant's impairments do not meet or equal a listed impairment." <u>Lewis v. Apfel</u>, 236 F.3d 503, 512 (9th Cir. 2001). Thus, a mere "boilerplate finding is insufficient to support a conclusion that a claimant's impairment does not do so." <u>Id.</u> Here though, the ALJ provided an extensive analysis of the medical evidence in the record concerning his narcissistic personality disorder (Tr. 27-29), which the Court finds adequate.

IV.  <u>The ALJ Did Not Err in Evaluating Plaintiff's Credibility</u>

Questions of credibility are solely within the control of the ALJ. <u>Sample v. Schweiker</u>, 694 F.2d 639, 642 (9th Cir. 1982). The court should not "second-guess" this credibility determination. <u>Allen</u>, 749 F.2d at 580. In addition, the court may not reverse a credibility determination where that determination is based on contradictory or ambiguous evidence. <u>Id.</u> at 579. That some of the reasons for discrediting a claimant's testimony should properly be discounted does not render the ALJ's determination invalid, as long as that determination is supported by substantial evidence. <u>Tonapetyan v. Halter</u>, 242 F.3d 1144, 1148 (9th Cir. 2001).

To reject a claimant's subjective complaints, the ALJ must provide "specific, cogent reasons for the disbelief." <u>Lester v. Chater</u>, 81 F.3d 821, 834 (9th Cir. 1996) (citation omitted). The ALJ "must identify what testimony is not credible and what evidence undermines the claimant's complaints." <u>Id.</u>; <u>Dodrill v. Shalala</u>, 12 F.3d 915, 918 (9th Cir. 1993). Unless affirmative evidence shows the claimant is malingering, the ALJ's reasons for rejecting the claimant's testimony must be "clear and convincing." <u>Lester</u>, 81 F.2d at 834. The evidence as a whole must support a finding of malingering. <u>O'Donnell v. Barnhart</u>, 318 F.3d 811, 818 (8th Cir. 2003).

1   In determining a claimant's credibility, the ALJ may consider "ordinary techniques of credibility evaluation," such as reputation for lying, prior inconsistent statements concerning symptoms, and other testimony that "appears less than candid." Smolen v. Chater, 80 F.3d 1273, 1284 (9th Cir. 1996). The ALJ also may consider a claimant's work record and observations of physicians and other third parties regarding the nature, onset, duration, and frequency of symptoms. Id. In addition, the ALJ may consider a claimant's activities of daily living and medical improvement. Id.; Morgan v. Commissioner of Social Sec. Admin., 169 F.3d 595, 599 (9th Cir. 1999); Tidwell v. Apfel, 161 F.3d 599, 601 (9th Cir. 1998).

In his opening brief, plaintiff makes a general statement that the ALJ improperly rejected his own testimony. Plaintiff's Opening Brief, p. 29. Plaintiff, however, again fails to state specifically what aspect or aspects of the ALJ's credibility determination he asserts were erroneous. A mere assertion that the ALJ erred in some respect without more will not suffice to establish the existence of reversible error. Indeed, the ALJ provided a number of acceptable reasons for finding plaintiff's testimony to be not fully credible. Thus, for example, the ALJ discounted plaintiff's credibility due to the nature and extent of his activities of daily living, inconsistent statements, and improvement on medication. Tr. 29-31.

V.   **The ALJ Improperly Assessed Plaintiff's Residual Functional Capacity**

If a disability determination "cannot be made on the basis of medical factors alone at step three of the evaluation process," the ALJ must identify the claimant's "functional limitations and restrictions" and assess his or her "remaining capacities for work-related activities." SSR 96-8p, 1996 WL 374184 *2. A claimant's residual functional capacity assessment is used at step four to determine whether he or she can do his or her past relevant work, and at step five to determine whether he or she can do other work. Id. It thus is what the claimant "can still do despite his or her limitations." Id.

A claimant's residual functional capacity is the maximum amount of work the claimant is able to perform based on all of the relevant evidence in the record. Id. However, a claimant's inability to work must result from his or her "physical or mental impairment(s)." Id. Thus, the ALJ must consider only those limitations and restrictions "attributable to medically determinable impairments." Id. In assessing a claimant's residual functional capacity, the ALJ also is required to discuss why the claimant's "symptom-related functional limitations and restrictions can or cannot reasonably be accepted as consistent with the medical or other evidence." Id. at *7.

ORDER
Page - 9

The ALJ assessed plaintiff with the following residual functional capacity:

> Based on all the evidence of record and extending to the claimant the greatest degree of credibility possible, I find the claimant continues to retain the residual functional capacity for a range of medium exertion on [sic]. However, he is limited to work involving only occasional interaction with the public and co-workers. Medium work involves lifting up to 50 pounds occasionally and 25 pounds frequently.

Tr. 31. Both parties agree the ALJ erred in assessing plaintiff's residual functional capacity. The Court too finds the ALJ erred in this regard.

Specifically, plaintiff argues the ALJ improperly limited him to only "occasional" interaction with the public and co-workers. On this point, the Court agrees. The substantial evidence in the record, both medical and otherwise, reveals that plaintiff had a "marked" (i.e., "[v]ery significant interference with basic work-related activities") limitation in his ability to relate appropriately to co-workers and supervisors and interact appropriately in public contacts. Tr. 314, 316; see also Tr. 203, 210-11, 220, 300, 304, 308-09, 312-13, 320-21, 326-30, 350, 352, 366, 369-70, 372, 375-76. Although the ALJ does not define the term "occasionally," it seems quite clear plaintiff is far more limited in his ability to interact with the public and co-workers than the ALJ found him to be. Indeed, as noted above, the ALJ himself found plaintiff to be markedly limited in his ability to maintain social functioning. Tr. 27.

Plaintiff further asserts the ALJ should have included in the residual functional capacity assessment the limitation that he is unable to tolerate the demands of a normal work setting. The substantial evidence in the record does indicate that plaintiff was markedly limited in his ability to tolerate the pressures and expectations of a normal work setting. Tr. 203-04, 210, 300, 304, 308, 312, 316, 369, 375. While a marked limitation constitutes a very significant interference with the ability to perform in this area, it does not necessarily mean that plaintiff is totally precluded from being able to do so. Indeed, none of the medical sources in the record found such total preclusion. Nevertheless, the ALJ erred by not including the above marked limitation in plaintiff's residual functional capacity assessment.

VI. The ALJ Erred in Finding Plaintiff Capable of Returning to His Past Relevant Work

The ALJ determined plaintiff to be capable of returning to his past relevant work. Specifically, the ALJ found in relevant part as follows:

> Impartial vocational expert Nancy Bloom testified the claimant worked as a building engineer, which was medium, skilled work, as a refrigeration mechanic, heavy, skilled work, and as a band saw operator, which is light, unskilled work. He has also performed work as a marine engineer, which is medium, skilled work, as a welder, which

> is medium and skilled, as a metal fabricator, heavy and skilled, and as a marine mechanic, which is medium and skilled work. . . . Some of claimant's past work required more than occasional interaction with others, such as the building maintenance engineer, the refrigeration mechanic, and other work. Although Ms. Bloom also testified to other work the claimant could perform, I have concluded the claimant retains the residual functional capacity to return to work as a band saw operator, and as a marine engineer. This work was light and medium, unskilled and skilled, respectively, which meets with the claimant's residual functional capacity. I find [the] testimony of Ms. Bloom to be credible and consistent with the information contained in the *Dictionary of Occupational Titles*.

Tr. 32. As with the ALJ's erroneous residual functional capacity assessment findings, the parties also both agree the ALJ erred in finding plaintiff capable of returning to his past relevant jobs of band saw operator and marine engineer. As such, the Court too finds the ALJ erred in this regard.

VII.   <u>This Matter Should Be Remanded for an Award of Benefits</u>

The Court may remand this case "either for additional evidence and findings or to award benefits." <u>Smolen</u>, 80 F.3d at 1292. Generally, when the Court reverses an ALJ's decision, "the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation." <u>Benecke v. Barnhart</u>, 379 F.3d 587, 595 (9th Cir. 2004) (citations omitted). Thus, it is "the unusual case in which it is clear from the record that the claimant is unable to perform gainful employment in the national economy," that "remand for an immediate award of benefits is appropriate." <u>Id.</u>

Benefits may be awarded where "the record has been fully developed" and "further administrative proceedings would serve no useful purpose." <u>Smolen</u>, 80 F.3d at 1292; <u>Holohan v. Massanari</u>, 246 F.3d 1195, 1210 (9th Cir. 2001). Specifically, benefits should be awarded where:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting [the claimant's] evidence, (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited.

<u>Smolen</u>, 80 F.3d 1273 at 1292; <u>McCartey v. Massanari</u>, 298 F.3d 1072, 1076-77 (9th Cir. 2002).

Defendant argues remand for further administrative proceedings is appropriate here, because there are unresolved issues and the record does not require a finding of disability. Specifically, defendant asserts this matter should be remanded to further consider the medical and other evidence in the record regarding plaintiff's ability to work, to provide rationale for all of the limitations contained in the ALJ's assessment of plaintiff's residual functional capacity, and to further evaluate plaintiff's past relevant work. Plaintiff, not surprisingly, disagrees, and so does the Court.

ORDER
Page - 11

1    First, defendant asserts this matter should be remanded to resolve certain conflicts in the opinions
2    provided by Dr. McCollum. For example, Dr. McCollum opined that "[w]ith training," plaintiff's "interest
3    in microelectronics and computers" could "lead to employment opportunities" that did not "require much
4    social contact." Tr. 320. At the same time, he checked boxes on a state agency form indicating plaintiff was
5    markedly limited in his ability to exercise judgment and make decisions, relate appropriately to co-workers
6    and supervisors, interact appropriately in public contacts, and respond appropriately to and tolerate the
7    pressures and expectations of a normal work setting. Tr. 316.

8    Plaintiff argues there are no conflicts here. The Court agrees. While it certainly is possible to read
9    some sort of inconsistency between Dr. McCollum's findings that plaintiff had a marked limitation in his
10   ability to exercise judgment, make decisions and respond appropriately to and tolerate the pressures and
11   expectations of a normal work setting, and his opinion that plaintiff could perform some sort of work, the
12   main thrust of Dr. McCollum's opinions was that although plaintiff was precluded from performing jobs that
13   required much social contact, he could do work that did not have that requirement. Accordingly, the Court
14   finds no meaningful conflicts in Dr. McCollum's opinions, and thus remanding this matter for the purpose of
15   re-evaluating Dr. McCollum's opinions would serve no useful purpose.

16   Defendant next argues Dr. Schneider's opinion that plaintiff could do some types of work which
17   also did not require much in the way of social contact does not establish disability. While this certainly may
18   be true, that does not explain why remand for further evaluation of Dr. Scheider's opinion is needed as
19   defendant asserts. As with the opinions of Dr. McCollum, Dr. Schneider's opinion is internally consistent in
20   that while he felt plaintiff could not perform jobs involving more than minimal interpersonal contact, he
21   would be able to do others requiring no such involvement. Tr. 321-30. Thus, the Court finds remand for
22   the purpose of further considering Dr. Schneider's opinion to be inappropriate as well.

23   Lastly, defendant argues remand is necessary to further consider the evidence in the record from
24   plaintiff's mental health therapists. Defendant asserts that because plaintiff's mental health therapists are not
25   "acceptable medical sources" as that term is defined by the Social Security Regulations, their opinions
26   regarding plaintiff's moderate to marked limitations in the ability to work with supervisors, co-workers and
27   the public, and to tolerate the pressures and expectations of a normal work setting are deemed to be those
28

ORDER
Page - 12

of lay witnesses, and thus are entitled to less weight than to those of Drs. McCollum and Schneider.[2] But these limitations are entirely consistent with those found by Dr. McCollum. In addition, the fact that Dr. Schneider found plaintiff could perform work which did not involve significant interpersonal contact does not conflict with the finding that he is markedly limited in dealing with others.

On the other hand, plaintiff's assertion that the opinions of Dr. Schneider, Dr. McCollum and his mental health therapists clearly show his narcissistic personality disorder renders him unable to sustain competitive employment is equally without merit. As discussed above, Drs. Schneider and McCollum both concluded that plaintiff could perform other work that would not involve significant interpersonal contact.[3] Plaintiff argues that any inconsistency between their conclusions in this regard and a finding of disability was resolved by the vocational expert's testimony that a marked limitation in the ability to deal with supervisors "would preclude substantial gainful employment." Tr. 492-93. Although, as discussed below, such testimony does establish plaintiff's disability in this case, it cannot be relied on to show that either Dr. Schneider or Dr. McCollum found plaintiff to be disabled.

Defendant also argues this matter should be remanded to obtain rationale for the ALJ's assessment of plaintiff's residual functional capacity. As discussed above, however, the substantial evidence in the record indicates that the ALJ should have included in that assessment marked limitations in the ability to respond appropriately to supervisors and co-workers, interact appropriately with the general public, and

---

[2] Because mental health therapists are not acceptable medical sources, opinions from such sources may be given less weight than opinions from those who are. See Gomez v. Chater, 74 F.3d 967, 970-71 (9th Cir. 1996); 20 C.F.R. § 404.1513(a), (d), § 416.913(a), (d) (licensed physicians and licensed or certified psychologists are "acceptable medical sources"). Instead, the opinions of mental health therapists generally are treated in the same manner as testimony of lay witnesses. See 20 C.F.R. § 404.1513(d), § 416.913(d) (Commissioner may also use evidence from other sources to show the severity of claimant's impairment(s) and how those impairments affects his or her ability to work).

[3] Plaintiff's argument that Dr. Schneider "did not ever state" he "*could* sustain competitive employment in any setting" (Plaintiff's Reply Brief, p. 6 (emphasis in original)) is not well taken, as Dr. Schneider clearly indicated several occupational areas plaintiff could pursue as long as social interaction was kept to a minimum (Tr. 326-30). Similarly, plaintiff misstates Dr. Schneider's opinion when he asserts Dr. Schneider "explicitly concluded: "*it is unlikely that he will be able to adapt to the demands of the workplace.*" Plaintiff's Reply Brief, p. 6 (citing Tr. 321) (emphasis provided by plaintiff). What Dr. Schneider actually said was that it was unlikely plaintiff would "be able to adapt to the *interpersonal* demands of the workplace." Tr. 321 (emphasis added). This restriction, however, merely conforms with the marked limitation in dealing with others found by Dr. McCollum, and does not in itself establish the existence of a disabling condition.

The opinion that it was "highly unlikely" plaintiff "would be able to sustain employment in any traditional work setting" expressed by one of his mental health therapists (Tr. 366, 372; see also Tr. 364), on the other hand, is inconsistent with the opinions of both Dr. McCollum and Dr. Schneider regarding plaintiff's ability to work. However, because Drs. McCollum and Schneider are acceptable medical sources, their opinions on plaintiff's work-related limitations are entitled to greater weight. For that reason, furthermore, this inconsistency does not constitute a sufficient basis for remanding this matter to re-consider that evidence.

ORDER
Page - 13

tolerate the pressures and expectations of a normal work setting. Also as discussed above, defendant has not shown that remand for further consideration of the medical source opinion evidence in the record is appropriate here. Accordingly, remand to give the Commissioner the opportunity to further consider this issue is inappropriate as well.

With respect to plaintiff's past relevant work, the Court finds the testimony of the vocational expert establishes that he is unable to return to either the band saw operator or marine engineer jobs. As pointed out by plaintiff, even accepting the ALJ's less restrictive limitation to occasional interaction with others, the vocational expert testified that such a limitation would preclude the job of marine engineer. Tr. 488. In response to questioning from plaintiff's counsel, furthermore, the vocational expert also testified, as noted above, that a marked limitation in the ability to deal with supervisors "would preclude substantial gainful employment" (Tr. 492-93), which, of course, includes the job of band saw operator.

Normally the Court is reluctant to make a finding of disability without giving the ALJ the chance to make a step five determination. Here, however, as explained above, the substantial evidence in the record shows plaintiff's is markedly limited in his ability to deal with supervisors. Also as discussed above, the vocational expert's testimony, which the ALJ found to be credible (Tr. 32), establishes that this limitation would preclude all other jobs, not just plaintiff's past relevant work. The Court does recognize that both Dr. Schneider and Dr. McCollum felt plaintiff was capable of performing at least some types of work that did not involve significant interpersonal contact.

The determination of whether there are other jobs existing in significant numbers in the national economy plaintiff can do at step five of the disability evaluation process, however, must be made through the testimony of a vocational expert or based on other similarly reliable occupational resources, such as the Commissioner's Medical-Vocational Guidelines. See Tackett v. Apfel, 180 F.3d 1094, 1100-01 (9th Cir. 1999); Osenbrock v. Apfel, 240 F.3d 1157, 1162 (9th Cir. 2000). The vocational expert testimony in this case was clear, and, as noted above, the ALJ relied on it. As such, the Court finds the ALJ would have no choice but to find plaintiff disabled if this case were remanded for further proceedings.

## CONCLUSION

Based on the foregoing discussion, the Court finds the ALJ improperly determined plaintiff was not disabled. Accordingly, the ALJ's decision is REVERSED, and, for the reasons set forth above, this matter

hereby is REMANDED to the Commissioner for an award of benefits.

DATED this 2nd day of June, 2006.

                                                /s/ Karen L. Strombom
                                                Karen L. Strombom
                                                United States Magistrate Judge